## BALL v. CARLEY.

*If the minutes of evidence taken by counsel should be surreptitiously introduced into the jury-room by the procurement of his client or the connivance of a juror, and should be there read and used as a basis for arriving at a verdict, or should otherwise influence the finding of the jury, it would be good cause for setting aside the verdict and awarding a new trial; but where such minutes have got before the jury by accident and have not influenced their verdict, it will not be.*

APPEAL from the *Tippecanoe* Court of Common Pleas.

ROACHE, J.—*Ball*, as administrator of *Herron*, filed his bill in chancery in the Court of Common Pleas of *Tippecanoe* county, alleging that at the previous term of the Court he had impleaded the said defendant, *Carley*, in an action of assumpsit, damages 3,000 dollars; that issue being joined, there was a jury trial, and a verdict and judgment for the plaintiff for 33 dollars; that upon the retiring of the jury to consult of their verdict, a vote was taken for the purpose of ascertaining their several opinions, and that the greater number expressed themselves in favor of finding for the plaintiff various sums ranging from 400 dollars to 600 dollars; that thereupon, one of their number, *Daniel Brawley*, drew from his pocket a memorandum of the evidence given in the cause, in the handwriting of *Chase*, one of the defendant's attorneys, and declared that it contained a correct statement of the evidence; some of the jurors objected to the reading of the memorandum; but it was, notwithstanding, read and reread, and exerted such an influence upon the minds of the jurors as to reduce their verdict at least 400 dollars;

that these facts were unknown to the complainant until after the adjournment of the Court, at the close of the term, so that he had no opportunity of availing himself of them, on a motion for a new trial. He further alleges that he was entitled to a judgment of at least 1,000 dollars, which he would have obtained but for the improper use made by the jurors of the memorandum of evidence. Prayer for a new trial.

*Carley* answered, under oath, denying that the complainant was entitled to any judgment in the suit at law, or that he had any ground to claim a new trial. He denies that there was any improper conduct on the part of the jury, or of any one else, which influenced their finding or prejudiced the complainant.

There is a written agreement, signed by counsel, admitting that the " memorandum" did not go to the jury with the knowledge or consent of the parties, or their attorneys.

Both parties took depositions. The cause went to a hearing, and the bill was dismissed.

The only question in the cause arises upon the proof. If the charges in the bill were established—if it were true that the minutes of evidence taken by counsel had been surreptitiously introduced into the jury room, by the procurement of the party, or by the still more reprehensible connivance of a juryman, and had there been read and used as a basis for arriving at a conclusion, or had even exercised an influence upon their finding, it would certainly be good cause for setting aside the verdict and awarding a new trial. Such gross misconduct would justly subject the guilty parties to punishment, which no Court should hesitate to inflict. See *Barlow* v. *The State*, 2 Blackf. 114, and authorities there cited. But upon looking into the depositions, we cannot conclude that there was any such misconduct in this case. We are satisfied, from the evidence, that the " memoranda" came into the jury room by an accident; that no improper use was made of them, and that they exerted no influence upon the verdict. The only evidence bearing on the point materially is found in

the depositions of the bailiff and of two of the jurors, one of whom was the foreman. The evidence of the bailiff goes strongly to support the allegations of the bill relative to the improper use made of the " memoranda." In his statements, he is positively contradicted by both the jurors. *Smiley*, who was the foreman, swears that the jury made up their verdict " from their recollection of what was proved at the trial," and without any reference, as far as he saw, knew, or believed, to the " memoranda" of evidence. *Brawley*, the other juror, sustains him fully, and, in addition, explains how the paper found its way into the jury room. He says, that when the jury were retiring, he gathered up from the table in the Court room, the papers in the cause, and upon drawing them out of his pocket, after arriving in the jury room, he discovered several sheets of paper containing minutes of evidence, one in the hand-writing of *Chase*, the defendant's attorney, and two in the hand-writing of *Jones*, one of plaintiff's counsel. He swears positively that he took up these papers inadvertently, and, upon finding them, made the fact known to his brother jurors, and that they did not, in any degree, affect the verdict.

We are of opinion, therefore, that no improper means were used to introduce the paper complained of into the jury room, nor was it used or relied upon as evidence, nor did it, to any extent, influence the minds of the jurors in coming to a conclusion.

*Per Curiam.*—The decree is affirmed with costs.

*D. Mace*, for the appellant.

*H. W. Chase*, for the appellee.